**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **KENNEDY MINNIFIELD, #130651,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:06-cv-1044-WKW** |
| | ) | |
| **BULLOCK COUNTY JAIL,** *et al.*, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S SPECIAL REPORT

COMES NOW Curtis Pritchett, Jail Administrator of the Bullock County Jail, the Defendant in the above-styled cause, and submits his Special Report to the Court as follows:

## I.    INTRODUCTION

The Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama on November 21, 2006. In his Complaint, the Plaintiff alleged that he was subjected to overcrowding, lack of security, inadequate medical attention and mental heath care, dangerous conditions resulting from location of the television, lack of "store or canteen," inadequate food, lack of head count, denial of access to the courts based upon an alleged failure of the jail to provide a law library, lack of exercise opportunity, lack of religious services, and inattention of jail staff to their duties due to television. [1]  On November 29, 2006, the Court ordered the Defendant to file an Answer and Special Report. Upon Motion for Extension of Time, the Court ordered the Answer and Special Report to be filed on or before January 23, 2007.

---

[1]  This statement of the issues and claims made by Plaintiff are based upon Plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant generally denies any such allegations as being untrue and completely without basis in law or fact.

## II.    DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Jail Administrator Curtis Pritchett denies the allegations made against him by the Plaintiff, as said allegations are untrue and completely without basis in law or fact, or fail to state a constitutionally-recognizable claim.

### A.    FACTS

The Plaintiff in this action, Joe E. Clements, was booked into the Bullock County Jail on October 27, 2006, as a convicted prisoner.  (Affidavit of Curtis Pritchett dated January 22, 2007 (hereafter, "Pritchett Aff."), attached hereto as Exhibit A and incorporated herein as if fully set forth, at ¶ 7.)  The Plaintiff was serving a life sentence in the Bullock County [State] Prison, when he escaped and was recaptured.    His incarceration in the Bullock County Jail lasted 11 days (from October 27, 2006 to November 7, 2006), while he was standing trial for the sexual assault of a State Corrections Officer committed during his escape from the State prison.  Id.

Contrary to the Plaintiff's allegations, the Bullock County Jail provides all constitutionally mandated necessities to its inmates.  The Bullock County Sheriff's Department has a policy of providing adequate housing and food for its residents.  (Pritchett Aff. at ¶ 8; Affidavit of Veronica Harris dated January 22, 2007 (hereafter, "Harris Aff."), attached hereto as Exhibit B and incorporated herein as if fully set forth, at ¶ 7; Affidavit of Johnny Martin dated January 22, 2007 (hereafter, "Martin Aff."), attached hereto as Exhibit C and incorporated herein as if fully set forth, at ¶ 7; Affidavit of Annie Reynolds dated January 22, 2007 (hereafter, "Reynolds Aff."), attached hereto as Exhibit D and incorporated herein as if fully set forth, at ¶ 7; Affidavit of Ruby Thomas dated January 22, 2007 (hereafter, "Thomas Aff."), attached hereto as Exhibit E and incorporated herein as if fully set forth, at ¶ 7.)  Each inmate receives three nutritious meals per day.  Id.  An inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for breakfast.  (Id.; Complaint at ¶ IV(5).)  Approximately three (3) days

2

a week the inmates receive a hot breakfast, which would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. (Pritchett Aff. at ¶ 8; Harris Aff. at ¶ 7; Martin Aff. at ¶ 7; Reynolds Aff. at ¶ 7; Thomas Aff. at ¶ 7.)  A typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and possibly pudding.  (Id.; Complaint at ¶ IV(6).)    A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread, green beans, and juice. (Pritchett Aff. at ¶ 8; Harris Aff. at ¶ 7; Martin Aff. at ¶ 7; Reynolds Aff. at ¶ 7; Thomas Aff. at ¶ 7.)  Inmates receive a hot lunch approximately three (3) times a week.  Id.  Inmates may get a "cold" supper, similar to the cold lunch described above.  Id.  However, at least three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*, chicken or lasagna, green beans, mashed potatoes, bread, and juice.  (Id.; Complaint at ¶ IV(6).)  Inmates receive at least one (1) hot meal a day.  Id.  It would be a violation of Sheriff's Department policy to fail to provide an inmate with less than three (3) nutritious meals per day.  (Pritchett Aff. at ¶ 8; Harris Aff. at ¶ 7; Martin Aff. at ¶ 7; Reynolds Aff. at ¶ 7; Thomas Aff. at ¶ 7.)

The Bullock County Jail is designed and built to hold twenty-eight (28) inmates. (Pritchett Aff. at ¶ 9; Harris Aff. at ¶ 8; Martin Aff. at ¶ 8; Reynolds Aff. at ¶ 8; Thomas Aff. at ¶ 8.)  The jail currently averages approximately thirty-one (31) inmates, an overage of approximately three (3) inmates above capacity.  Id.  These extra inmates are required to sleep in the "day room" (an inmate common area) rather than in beds in individual cells.  Id.  However, each inmate assigned to the day room is issued a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.  Id.

The Bullock County Jail has at least one (1) correctional officer on duty at all times. (Pritchett Aff. at ¶ 10; Harris Aff. at ¶ 9; Martin Aff. at ¶ 9; Reynolds Aff. at ¶ 9; Thomas Aff. at ¶ 9.)  This is sufficient for a jail holding approximately thirty (30) inmates; however, should a correctional officer need assistance, he or she have the ability and authorization to call for

assistance from on-duty road deputies.  Id.  Further, the Bullock County Jail does not conduct formal inmate counts, inasmuch as the jail is small enough to make such formalized procedures unnecessary.  Id.  There has not been an escape from the Bullock County Jail since prior to 2000.  Id.

The Bullock County Jail does not provide a law library.  (Pritchett Aff. at ¶ 11; Harris Aff. at ¶ 10; Martin Aff. at ¶ 10; Reynolds Aff. at ¶ 10; Thomas Aff. at ¶ 10.)  However, inmates can request legal materials, and the Jail Administrator makes every effort to honor such requests.  Id.  The Plaintiff never requested any legal materials.  Id.

Weather, staffing, and security issues limit the availability of outdoor exercise opportunities for the inmates of the Bullock County Jail.  (Pritchett Aff. at ¶ 12; Harris Aff. at ¶ 11; Martin Aff. at ¶ 11; Reynolds Aff. at ¶ 11; Thomas Aff. at ¶ 11.)  However, inmates can walk or otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical exercise.  Id.

Jail Administrator Curtis Pritchett has put procedures into place to ensure that inmates receive necessary medical care.  If an inmate desires medical care, he or she may inform any correctional officer that he or she desires a doctor appointment.  (Pritchett Aff. at ¶ 14; Harris Aff. at ¶ 12; Martin Aff. at ¶ 12; Reynolds Aff. at ¶ 12; Thomas Aff. at ¶ 12.)  Those requests are relayed to the Jail Administrator, who then makes the requested appointment.  Id.  Further, the Jail Administrator enters both cell blocks at least once a week and inquires as to the needs, health care and otherwise, of the inmates.  Id.  In the event of an emergency, the jail staff is fully authorized to immediately transport an inmate to the emergency room of the local hospital.  Id.  It is a violation of the jail's policy to deny an inmate necessary medical care.  Id.  The Plaintiff never complained of any medical ailment(s) or requested medical treatment.  Id.

Similarly, if an inmate believes that he requires mental health treatment, he can request it from any correctional officer. (Pritchett Aff. at ¶ 14; Harris Aff. at ¶ 13; Martin Aff. at ¶ 13; Reynolds Aff. at ¶ 13; Thomas Aff. at ¶ 13.)  Those requests are relayed to the Jail Administrator, who then makes an appointment with East Central Mental Health-Mental Retardation Center (the "Center").  Id.  At the appointed time, the Jail Administrator transports the inmate to the Center, which then evaluates the inmate's treatment needs.  Id.  The Plaintiff never complained of any mental health issues or requested treatment.  Id.

All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed. (Pritchett Aff. at ¶ 15; Harris Aff. at ¶ 14; Martin Aff. at ¶ 14; Reynolds Aff. at ¶ 14; Thomas Aff. at ¶ 14.)  Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions.  Id.  The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor did the jail staff have any knowledge of the Plaintiff being prescribed or requesting any medication.  Id.

The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room. (Pritchett Aff. at ¶ 16; Harris Aff. at ¶ 15; Martin Aff. at ¶ 15; Reynolds Aff. at ¶ 15; Thomas Aff. at ¶ 15.) The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population.  Id.  The cell block contains a table, which could be used to display a television if the inmates so choose.  Id.

Some windows in the individual jail cells are broken out. (Pritchett Aff. at ¶ 17; Harris Aff. at ¶ 16; Martin Aff. at ¶ 16; Reynolds Aff. at ¶ 16; Thomas Aff. at ¶ 16.)  These are interior windows, and do not pose environmental, safety or security hazards.  Id.  Because the inmates broke out the windows, and because they are interior windows which have no effect on environmental (weather) factors, the windows have not been replaced.  Id.  The Plaintiff was not

placed in an individual cell, and therefore did not have a cell window that could be broken.  Id.
The Plaintiff was assigned to the day room of the cell block.  Id.  The cell block windows are not
broken, but are intact.  Id.

The Bullock County Jail does provide snack and drink machines for inmates who have
money to take advantage of them.  (Pritchett Aff. at ¶ 18; Harris Aff. at ¶ 17; Martin Aff. at ¶ 17;
Reynolds Aff. at ¶ 17; Thomas Aff. at ¶ 17.)  However, at the time of the Plaintiff's
incarceration, the Jail was between vendors, so no machines were available.  Id.  However, at
least once a week the Jail Administrator would collect money from the inmates and purchase
snacks for them from a local store.  Id.  The Plaintiff never asked the Jail Administrator or any
other jail employee to purchase any snacks or other merchandise for him.  Id.

The Bullock County Jail does not provide religious services to its inmates.  (Pritchett Aff.
at ¶ 19; Harris Aff. at ¶ 18; Martin Aff. at ¶ 18; Reynolds Aff. at ¶ 18; Thomas Aff. at ¶ 18.)
However, inmates are allowed visits from clergy, church members, or other means of spiritual
edification and instruction, as appropriate.  Id.

Jail correctional officers do have access to a television in the "pod" (what the Plaintiff
designates as the "Cube"), which is the supervision and surveillance area of the Jail.  (Pritchett
Aff. at ¶ 20; Harris Aff. at ¶ 19; Martin Aff. at ¶ 19; Reynolds Aff. at ¶ 19; Thomas Aff. at ¶ 19.)

The Bullock County Jail had an inmate grievance procedure at all times relevant to the
Plaintiff's Complaint.  (Pritchett Aff. at ¶ 4; Harris Aff. at ¶ 4; Martin Aff. at ¶ 4; Reynolds Aff.
at ¶ 4; Thomas Aff. at ¶ 4.)  Grievances could be reported to any member of the jail staff.  Id.  It
was a violation of jail policy to deny an inmate access to the grievance procedure.  (Pritchett Aff.
at ¶ 5; Harris Aff. at ¶ 5; Martin Aff. at ¶ 5; Reynolds Aff. at ¶ 5; Thomas Aff. at ¶ 5.)  The
Plaintiff did not report any grievance with respect to the subject matter of this lawsuit, or any

other matter, during his ten (10) days of incarceration at the Bullock County Jail.  (Pritchett Aff. at ¶ 6; Harris Aff. at ¶ 6; Martin Aff. at ¶ 6; Reynolds Aff. at ¶ 6; Thomas Aff. at ¶ 6.)

**B.    LAW RELATING TO THE PLAINTIFF'S ALLEGATIONS**

 **1.    The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for Failure to Exhaust Administrative Remedies.**

 The Prison Litigation Reform Act requires exhaustion of all available administrative remedies ***before filing a lawsuit*** under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (2005). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  As a result, his claims are barred.

 First, the Plaintiff failed to properly utilize the grievance procedure provided at the local level in the Bullock County Jail to address his claims prior to the filing of this lawsuit.  The Bullock County Jail has process by which inmates can either present grievances or make requests of the jail staff.  (Pritchett Aff. at ¶ 4; Harris Aff. at ¶ 4; Martin Aff. at ¶ 4; Reynolds Aff. at ¶ 4; Thomas Aff. at ¶ 4.)  No such grievances were presented by the Plaintiff.  (Pritchett Aff. at ¶ 6; Harris Aff. at ¶ 6; Martin Aff. at ¶ 6; Reynolds Aff. at ¶ 6; Thomas Aff. at ¶ 6.)

 Further, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

 As State officials, sheriffs and jailers enjoy sovereign immunity from suit under Article I, § 14 of the Alabama Constitution.  Turquitt v. Jefferson County, 137 F.3d 1285, 1288-89 (11th

Cir. 1998). Consequently, a claim for monetary damages against Administrator Pritchett is, in essence, a claim against the State of Alabama. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Because both the Covington County Jail and the State provided administrative remedies that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

> **2.    The Defendant, in His Official Capacity, Is Entitled to Judgment in His Favor as a Matter of Law.**

In his Complaint, the Plaintiff has not designated whether he is suing the Defendant in his official or individual capacity. Out of an abundance of caution, to the extent the Plaintiff's Complaint can be construed as making official capacity claims, the Eleventh Amendment bars such claims. Additionally, the Defendant, in his official capacity, is not a "person" for purposes of 42 U.S.C. § 1983.

> **(a)    All official capacity claims against Jail Administrator Pritchett are barred by the Eleventh Amendment to the United States Constitution.**

The Plaintiff's official capacity claims against Jail Administrator Pritchett are due to be dismissed for lack of subject matter jurisdiction. The Defendant, in his capacity as jailer, is an executive officer of the State of Alabama. Therefore, a suit against the Defendant, in his official capacity, is a suit against the State of Alabama. See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66. Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983. See Free, 887 F.2d at 1557; see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition

that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity).  Thus, this Court lacks subject matter jurisdiction over these claims.

> **(b)    The Defendant, in his official capacity, is not a "person" for purposes of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983.  The United States Supreme Court has held that a State official sued in his or her official capacity, is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Thus, any claims against Jail Administrator Pritchett, in his official capacity, are due to be dismissed because the Defendant is not a "person" under § 1983, and therefore, these claims fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

> **3.    Jail Administrator Pritchett is Entitled to Qualified Immunity.**

In his individual capacity, Jail Administrator Pritchett is entitled to qualified immunity and a dismissal of Plaintiff's claims unless Pritchett violated the Plaintiff's clearly established Constitutional rights of which a reasonable person would have known.  Lancaster, 116 F.3d at 1424.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).  In the light of pre-existing law the unlawfulness must be apparent.  Anderson v. Creighton, 483

U.S. 635, 640 (1987). Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity. <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u> (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that Administrator Pritchett had "fair warning" that his conduct violated the Plaintiff's constitutional rights? <u>Willingham v. Loughran</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Administrator Pritchett was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. <u>See</u> <u>Rodgers v. Horsley</u>, 39 F.3d 308, 311 (11th Cir. 1994). A Constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." <u>Jenkins v. Talladega Board of Education</u>, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The Plaintiff has failed to allege, and the facts do not support, that Administrator Pritchett violated the Plaintiff's federally protected rights. The instant Plaintiff alleges that he was

subjected to overcrowding, lack of security, inadequate medical attention and mental heath care, dangerous conditions resulting from location of the television, lack of "store or canteen," inadequate food, lack of head count, denial of access to the courts based upon an alleged failure of the jail to provide a law library, lack of exercise opportunity, lack of religious services, and inattention of jail staff to their duties due to television. Initially, it should bear noting that the Plaintiff's claims are extremely vague, general, and conclusory, without much if any factual context to support them. Therefore, answering such claims in any specific manner is necessarily difficult. Nevertheless, the Plaintiff cannot meet either of his burdens under the qualified immunity analysis – he cannot show a constitutional violation or clearly established law that placed Administrator Pritchett on notice that his conduct was unlawful.

### (a)    Administrator Pritchett did not violate any of the Plaintiff's federally protected rights.

The Plaintiff cannot meet his first burden under the qualified immunity standard – he cannot show a violation of his federal rights. Administrator Pritchett is therefore entitled to qualified immunity for two reasons. First, there are no allegations of any wrongdoing on the part of Administrator Pritchett. Second, there is no causal connection between the policies promulgated by Administrator Pritchett and the Plaintiff's potential injuries.[2]

### (1)    There is no allegation of any personal wrongdoing on the part of Administrator Pritchett.

There is no constitutional mandate that prisons or jails be made comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require

---

[2] Any reference to injuries are for argument purposes only. The Plaintiff has failed to allege any injury whatsoever.

limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." <u>Bell v. Wolfish</u>, 441 U.S. 520, 546 (1979).

To overcome Administrator Pritchett's entitlement to qualified immunity, the Plaintiff must prove that the Defendant was deliberately indifferent. <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994). Specifically, the Plaintiff must prove that Administrator Pritchett was aware that a substantial risk of serious harm was to the inmate's health or safety existed. The Plaintiff must further prove that Administrator Pritchett drew the inference of the existence of such a risk. <u>Id.</u> At the outset, it must be noted that the Plaintiff has not made any specific allegations against Administrator Pritchett.

Initially, it is clear that many of the Plaintiff's claims do not implicate Constitutional rights at all. The Plaintiff does not have a right to increased security in the jail.[3] Similarly, the Constitution does not require a head count, or a jail store or canteen, or interior cell windows, or the placement of a television in any particular location.[4] Finally, there is no constitutional prohibition against correctional officers watching a television in the pod.

Turning first to Plaintiff's overcrowding claims, Administrator Pritchett must concede that the Bullock County Jail is slightly overcrowded. (Pritchett Aff. at ¶ 9; Harris Aff. at ¶ 8; Martin Aff. at ¶ 8; Reynolds Aff. at ¶ 8; Thomas Aff. at ¶ 8.) However, the overcrowding does not present a health or safety hazard, as all inmates are provided adequate sleeping facilities and bedding. <u>Id.</u> The United States Supreme Court has determined that "double-celling" – the practice of housing two inmates to a cell as a result of overcrowding – was not unconstitutional

---

[3] If the Plaintiff were to allege the existence a particular danger that might have been averted by additional security, he might possibly have alleged some sort of Constitutional violation. However, there are no such allegations by the Plaintiff, merely that there is a "lack of security at [the] Bullock County Jail." It is even unclear whether the Plaintiff is referring to security personnel (corrections officers), security procedures (i.e. the head count), or security apparatus (i.e. cameras, locks, etc.). Regardless, "lack of security" does not establish a Constitutional violation.

[4] Again, had the Plaintiff alleged that the missing windows constituted some sort of hazard, or that the location of the television set constituted a hazard, he might have alleged some sort of Constitutional violation. However, there are no such allegations by the Plaintiff. Nevertheless, the affidavits of the Defendant and other jail personnel, attached hereto, address these issues for the Court's benefit.

as long as it didn't result in "deprivations of essential food, medical care, or sanitation," increase violence among inmates, or "create other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981). Though the Plaintiff has alleged insufficient food and medical care, which allegations are addressed below, he has not alleged that such insufficiency is related to the overcrowding of the jail. He has also not alleged any deprivation of sanitation, or increased violence, or other intolerable prison condition, resulting from the overcrowding. See also, Bell v. Wolfish, 441 U.S. 520, 543 (1979) (finding that, while "double-bunking" may have taxed particular equipment or facilities in the jail, it did not fail to meet Constitutional standards); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that **the fact that an inmate "had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation**") (emphasis added).

The Constitution requires that inmates are provided "a well-balance meal, containing sufficient nutritional value to preserve health." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977). See also, Hamm, 774 F.2d at 1575. Each inmate at the Bullock County Jail receives three (3) nutritious meals per day. (Pritchett Aff. at ¶ 8; Harris Aff. at ¶ 7; Martin Aff. at ¶ 7; Reynolds Aff. at ¶ 7; Thomas Aff. at ¶ 7.) At least one (1) meal a day is a hot meal. Id.

Regarding the Plaintiff's claims of inadequate exercise, an outdoor exercise yard is not Constitutionally required. The Eleventh Circuit has held that provision of indoor space for exercises such as push-ups, sit-ups, or jogging in place meets Constitutional muster. Wilson v. Blankenship, 163 F.3d 1284, 1293 (11th Cir. 1998). Federal courts have held that infrequent access to exercise outside of an inmate's cell does not violate the Constitution. See, e.g., French v. Hood, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (holding lack of exercise states a Constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"); Bensinger v. Boyle, 1995

WL 422795, *2 (E.D. Pa. 1995) (holding deprivation of exercise for five straight days not a Constitutional violation). The Plaintiff has adequate room for these activities in the day room, and has not alleged that a lack of exercise caused his muscles to atrophy. (Complaint; Pritchett Aff. at ¶ 12; Harris Aff. at ¶ 11; Martin Aff. at ¶ 11; Reynolds Aff. at ¶ 11; Thomas Aff. at ¶ 11.)

It is important to note that, with respect to the Plaintiffs allegations concerning jail conditions (exercise, bedding, overcrowding, meals, missing windows, etc.), the Complaint does not allege, even in conclusory language, that the Plaintiff suffered any injury or deterioration in health due to a lack of facilities, exercise or proper nutrition. (See generally, Complaint.) In other words, nowhere in the Complaint does the Plaintiff allege that these conditions during the relevant ten-day (10) period caused him harm. Id.

The due process clause of the Fourteenth Amendment to the United States Constitution assures inmates a right of meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 821-22 (1977). However, this right requires only that an inmate be provided with some reasonable manner with which he may bring his legal claims. Id. at 830. A law library is one of many ways to provide inmates with access to the courts, but is not a Constitutional requirement. Id. at 830-31; Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998) (citing Bounds and holding that the United States Supreme Court did *not* create a "freestanding right to a law library" for inmates). Providing inmates with attorneys or other trained legal personnel also satisfy the Fourteenth Amendment. Bounds, 430 U.S. at 830-31. Regardless, in order to prevail on a denial of access to the courts claim an inmate must establish prejudice by "demonstrating that the alleged shortcoming in the library . . . hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

In his claim regarding denial of access to legal materials, Plaintiff has actually brought a claim of denial of access to the courts, which claim must fail. The Plaintiff obviously was not

hindered in bringing the instant lawsuit as it is now pending before this Court.  Furthermore, the Constitution does not mandate that jails have law libraries.  Bass, 143 F.3d at 1445.  The United States Supreme Court has very clearly held that having a law library is only one of many ways to provide access to the courts.  See Bounds, 430 U.S. at 830-31.  Regardless, in order to prevail on a denial of access to the courts claim an inmate must establish prejudice by "demonstrating that the alleged shortcoming in the library . . . hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343, 351 (1996).

Finally, the Plaintiff does indeed have access to legal materials.  Inmates are free to request that a book from the library be brought to them.  (Pritchett Aff. at ¶ 11; Harris Aff. at ¶ 10; Martin Aff. at ¶ 10; Reynolds Aff. at ¶ 10; Thomas Aff. at ¶ 10.)    Plaintiff has failed to avail himself of that procedure.  Id.

The United States Supreme Court has held that a penal institution does not have to allow inmates to attend religious services as long as alternative means of exercising their rights remain open and available to the inmates.  O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).  The Jail provided just such an alternative by allowing visits by clergy to jail inmates.  (Pritchett Aff. at ¶ 19; Harris Aff. at ¶ 18; Martin Aff. at ¶ 18; Reynolds Aff. at ¶ 18; Thomas Aff. at ¶ 18.)

The medical care in the Bullock County Jail is not deficient.  A Constitutional violation under the Eighth Amendment for denial of medical care is stated where the facts tend to show that a jail official was deliberately indifferent to the serious medical needs of an inmate.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Plaintiff must satisfy both an objective and a subjective inquiry.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).  First, he must show an objectively serious medical need.  Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543.  Second, the Plaintiff must demonstrate that the defendants acted, or failed to act, with an attitude of "deliberate indifference" to that serious

medical need.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  A prison official cannot be deliberately indifferent to an excessive risk to an inmate's health unless he is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draws[s] the inference."  <u>Farmer</u>, 511 U.S. at 837.  In the instant case, the Plaintiff has failed to allege any facts tending to show that this Defendant knew of a serious medical condition.

The Plaintiff has alleged that he "fell in the Jail shower and hurt his back."  (<u>See</u>, Complaint at ¶ (IV)(3).)  While the Plaintiff's medical condition ***could*** have become a serious medical need, there is no indication that it was or became one.  At no time did the Plaintiff inform any Jail correctional officer that he had injured himself, or that he needed medical treatment.  (Pritchett Aff. at ¶ 13; Harris Aff. at ¶ 12; Martin Aff. at ¶ 12; Reynolds Aff. at ¶ 12; Thomas Aff. at ¶ 12.)   The Plaintiff has not alleged any facts to show that he has been in danger of serious injury.  Consequently, he cannot show an objectively serious medical need for purposes of this lawsuit.

Similarly, the Plaintiff has not only failed to allege a serious mental health condition, he has failed to allege that he suffered from *any* mental health condition.  He never requested mental health treatment from the Jail staff, and has failed to allege that he was in danger of serious injury because of any possible mental health issues.  (Complaint; Pritchett Aff. at ¶ 14; Harris Aff. at ¶ 13; Martin Aff. at ¶ 13; Reynolds Aff. at ¶ 13; Thomas Aff. at ¶ 13.) Consequently, he cannot show an objectively serious mental health need for purposes of this lawsuit.

The Plaintiff complains that the Jail correctional officers dispense inmate medications. However, his Complaint is completely devoid of any facts which would indicate what in particular he is complaining of.  (<u>See, generally</u>, Complaint.)  There is, in fact, no allegation in the Complaint that the Plaintiff needed to receive medication, had been prescribed medication,

wanted medication, was not receiving medication, was supposed to be receiving medication, or any other allegation regarding medication specific to the Plaintiff.  Id.  Therefore, it is difficult to address and answer the Plaintiff's allegations.  However, it is clear that the Plaintiff has not alleged any injury concerning the method used by Jail staff to dispense medication.

Administrator Pritchett was not deliberately indifferent to any objectively serious need that could be construed in the Plaintiff's Complaint.  In order to be deliberately indifferent, an official must both know of a serious risk of harm and disregard it.  Farmer, 511 U.S. at 837. There is absolutely no evidence, and Plaintiff does not allege, that Administrator Pritchett knew of the Plaintiff's physical or mental condition, or need for medication.  (See, generally, Complaint.)  In fact, the Plaintiff fails to allege that Administrator Pritchett made any decision regarding the Plaintiff's treatment whatsoever.  Id.

While it is true that the jail does not have a full time nurse or doctor on staff, it has policies and procedures in place to get necessary care to inmates.  (Pritchett Aff. at ¶ 13; Harris Aff. at ¶ 12; Martin Aff. at ¶ 12; Reynolds Aff. at ¶ 12; Thomas Aff. at ¶ 12.)   These actions are anything but deliberately indifferent and exceed the Constitutional minimums established by the Eleventh Circuit.  See Free, 887 F.2d at 1556 (stating a jail "policy" of having no doctor or nurse on staff was not constitutionally deficient).

Although this Court has ordered that the Defendant "provide an affidavit from a health care professional which (i) contains a detailed explanation of the treatment provided to the plaintiff, and (ii) interprets the information contained in the medical records relevant to the claims presented in the complaint," because the Plaintiff neither requested nor received any health care treatment, there is no health care provider to explain the non-existent treatment. Further, because no treatment was requested or administered, there are no medical records to interpret.

Based upon the foregoing, the Plaintiff has failed to allege a violation of his federally protected rights – let alone a violation personally committed by Administrator Pritchett. Therefore, Administrator Pritchett is entitled to qualified immunity and judgment as a matter of law on the Plaintiff's claims.

> **(2)    There is no causal connection between any policy or custom promulgated by Jail Administrator Pritchett and the Plaintiff's alleged injuries.**

The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added)).

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The Eleventh Circuit applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately

18

indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's Constitutional infringement.  Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990).  The Amended Complaint fails to allege facts supporting either of these elements, and there is no evidence to support the allegations even if they were made.

First, this Defendant's policies and actions were not deliberately indifferent.  There is no allegation or evidence of personal involvement on the part of Administrator Pritchett.  (See generally Complaint).  Furthermore, there is no allegation that Administrator Pritchett had knowledge (either actual or constructive) of a training deficiency in the Bullock County Jail or that the policies and/or customs of the jail would result in Constitutional violations.  Id.  There is no allegation of widespread obvious, flagrant, rampant and continuous abuse by corrections officers.  Id.

Second, there are no facts in the record from which a reasonable person could conclude that the conduct of Administrator Pritchett was deliberately indifferent.  For example, there are no specific allegations that the food at the jail – either in quantity or quality – has harmed the Plaintiff, or any other inmate, or that jail overcrowding or the location of the television set has presented a health or safety risk.  There are no allegations that the number of correctional officers, the lack of a formal head count, or the presence of a television in the pod, have increased the likelihood of escape or incident in the Jail.

Prison officials may be held liable for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  There are no allegations in the Complaint at all to show that Administrator Pritchett was aware of any risk

of harm to the Plaintiff – let alone a substantial risk of harm.  Consequently, the Plaintiff has failed to meet the second element of supervisory liability under § 1983.

Regarding the third element of supervisory liability, there is no causal connection between this Defendant's conduct and the alleged Constitutional deprivation.  Again, there is no evidence that Administrator Pritchett failed to train the jail personnel.

The Plaintiff has failed to allege, and the facts do not show, the existence of the elements of supervisory liability under § 1983.  See Greason, 891 F.2d at 836-37.  Administrator Pritchett cannot be held vicariously liable under § 1983.  Monell, 436 U.S. at 694-95.  Consequently, Jail Administrator Pritchett is entitled to qualified immunity and judgment in his favor as a matter of law.  Saucier, 533 U.S. at 201.

### (b)    No clearly established law gave Administrator Pritchett fair warning that his conduct was unlawful.

The Plaintiff must show that clearly established law provided Administrator Pritchett with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that Administrator Pritchett's conduct was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

20

As the Plaintiff has made no direct allegations with respect to the conduct of Administrator Pritchett, there is nothing from which the Court may judge whether he acted lawfully or unlawfully. Consequently, the Plaintiff has failed to meet the second burden placed upon him by the qualified immunity standard.

It should be noted, however, that with respect to the policies Administrator Pritchett has put in place at the Covington County Jail, each one is Constitutional. For example, the Plaintiff's exercise claim also fails under the decisions of federal courts. See, e.g., French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986) (holding lack of exercise states a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened"); Bensinger v. Boyle, 1995 WL 422795, *2 (E.D. Pa. 1995) (holding deprivation of exercise for five straight days not constitutional violation). The Plaintiff's other claims are likewise deficient for the reasons stated above.

## IV.    MOTION FOR SUMMARY JUDGMENT

Administrator Pritchett respectfully restates his request that this Honorable Court treat this Special Report as a Motion for Summary Judgment and grant unto him the same.

Respectfully submitted, this 23rd day of January, 2007.

> **s/Scott W. Gosnell**
> SCOTT W. GOSNELL – Bar No. GOS002
> Attorney for Defendant
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Road (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  sgosnell@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following by U.S. Mail:

> Kennedy Minnifield
> Inmate Identification Number 130651
> Holman Unit 3700
> Atmore, Alabama  36503

> **s/Scott W. Gosnell**
> OF COUNSEL

## EXHIBIT A

**Affidavit of Curtis Pritchett**
January 22, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

KENNEDY MINNIFIELD, #130651,  )
                             )
    Plaintiff,           )
                             )
v.                           )    **Civil Action No. 2:06-cv-1044-WKW**
                             )
BULLOCK COUNTY JAIL, *et al.*,  )
                             )
    Defendant.           )

## AFFIDAVIT OF CURTIS PRITCHETT

STATE OF ALABAMA        )
                        )
COUNTY OF BULLOCK        )

1.    My name is Curtis Pritchett.  I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

2.    I am the current Jail Administrator of the Bullock County Jail (hereafter, the "Jail"), Bullock County, Alabama and was the Jail Administrator at all times relevant to Plaintiff's Complaint.

3.    I have reviewed the Plaintiff's Complaint filed in this matter.  I have some personal knowledge of the facts stated in the Complaint.

4.    It is the policy of the Bullock County Sheriff's Department that members of the Jail staff receive and answer inmate grievances.  Members of the Jail staff are charged with responding to such grievances.

5.    To not address a grievance would be a violation of the policy of the Jail.

6.      To my knowledge, the Plaintiff did not report any grievance with respect to the subject matter of this lawsuit, or any other matter, during his ten (10) days of incarceration at the Jail.

7.      The Plaintiff in this action, Kennedy Minnifield, was booked into the Bullock County Jail on October 27, 2006, as a convicted prisoner. The Plaintiff was serving a life sentence in the Bullock County [State] Prison, when he escaped and was recaptured. His incarceration in the Bullock County Jail lasted 11 days (from October 27, 2006 to November 7, 2006), while he was standing trial for the sexual assault of a state corrections officer committed during his escape from the state prison.

8.      The Bullock County Sheriff's Department has a policy of providing adequate housing and food for its residents. Each inmate receives three nutritious meals per day. An inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for breakfast. Approximately three (3) days a week the inmates receive a hot breakfast, which would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. A typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and possibly pudding. A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread, green beans, and juice. Inmates receive a hot lunch approximately three (3) times a week. Inmates may get a "cold" supper, similar to the cold lunch described above. However, at least three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*, chicken or lasagna, green beans, mashed potatoes, bread, and juice. Inmates receive at least one hot meal a day. It would be a violation of Sheriff's Department policy to fail to provide an inmate with less than three nutritious meals per day.

2

01/22/2007 17:00 334-738-3982 BULLOCK CO. SHERIFF PAGE 26
01-22-'07 15:51 FROM-Webb Eley P.C. 334-262-1772 T-384 P0047/006 F-818

Case 2:06-cv-01044-WKW-SRW Document 19-2 Filed 01/23/2007 Page 4 of 6

9.      The Bullock County Jail is designed and built to hold 28 inmates. The jail currently averages approximately 31 inmates, an overage of approximately 3 inmates above capacity. These extra inmates are required to sleep in the "day room" (an inmate common area) rather than in beds in individual cells. However, each inmate assigned to the day room is issued a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.

10.      The Bullock County Jail has at least one (1) correctional officer on duty at all times. This is sufficient for a jail holding approximately thirty (30) inmates; however, should a correctional officer need assistance, he or she has the ability and authorization to call for assistance from on-duty road deputies. Further, the Bullock County Jail does not conduct formal inmate counts, inasmuch as the jail is small enough to make such formalized procedures unnecessary. To my knowledge, there has not been an escape from the Bullock County Jail since prior to 2000.

11.      The Bullock County Jail does not provide a law library. However, inmates can request legal materials, and I personally make every effort to honor such requests. To my knowledge, the Plaintiff never requested any legal materials.

12.      Weather, staffing, and security issues limit the availability of outdoor exercise opportunities for the inmates of the Bullock County Jail. However, inmates can walk or otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical exercise.

13.      If an inmate desires medical care, he or she may inform any correctional officer that he or she desires a doctor appointment. Those requests are relayed to me, and I then make an appointment for the inmate to see a physician. Further, I personally enter both cell blocks at least once a week and inquire as to the needs, health care and otherwise, of the inmates. In the

3

event of an emergency, the jail staff is fully authorized to immediately transport an inmate to the emergency room of the local hospital. It is a violation of the jail's policy to deny an inmate necessary medical care. To my knowledge, the Plaintiff never complained of any medical ailment(s) or requested medical treatment.

14.    If an inmate believes that he or she requires mental health treatment, he or she can request it from any correctional officer. Those requests are relayed to me, and I then make an appointment with East Central Mental Health-Mental Retardation Center (the "Center"). At the appointed time, I transport the inmate to the Center, which then evaluates the inmate's treatment needs. To my knowledge, the Plaintiff never complained of any mental health issues or requested treatment.

15.    All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed. Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions. The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor do I have any knowledge of the Plaintiff being prescribed or requesting any medication.

16.    The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room. The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population. The cell block contains a table, which could be used to display a television if the inmates so choose.

17.    Some windows in the individual jail cells are broken out. These are interior windows, and do not pose environmental, safety or security hazards. Because the inmates broke out the windows, and because they are interior windows which have no effect on environmental

4

(weather) factors, the windows have not been replaced. The Plaintiff was not placed in an individual cell, and therefore did not have a cell window that could be broken. The Plaintiff was assigned to the day room of the cell block. The cell block windows are intact and not broken.

18. The Bullock County Jail does provide snack and drink machines for inmates who have money to take advantage of them. However, at the time of the Plaintiff's incarceration, the Jail was between vendors, so no machines were available. However, at least once a week I personally would collect money from the inmates and purchase snacks for them from a local Dollar Store. The Plaintiff never asked me to purchase any snacks or other merchandise for him.

19. The Bullock County Jail does not provide religious services to its inmates. However, inmates are allowed visits from clergy, church members, or other means of spiritual edification and instruction, as appropriate.

20. Jail correctional officers do have access to a television in the "pod" (what the Plaintiff designates as the "Cube"), which is the supervision and surveillance area of the Jail.

21. I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Curtis Pritchett

**SWORN TO** and **SUBSCRIBED** before me this _22_ day of January, 2007.

NOTARY PUBLIC

My Commission Expires: _18 Feb 2008_

**EXHIBIT B**

**Affidavit of Veronica Harris**
January 22, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

KENNEDY MINNIFIELD, #130651,          )

    Plaintiff,                            )

                                          )

v.                                     )     Civil Action No. 2:06-cv-1044-WKW

                                          )

BULLOCK COUNTY JAIL, *et al.*,          )

    Defendant.                            )

### AFFIDAVIT OF VERONICA HARRIS

STATE OF ALABAMA          )
                              )
COUNTY OF BULLOCK          )

    1.    My name is Veronica Harris. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

    2.    I am a Correctional Officer at the Bullock County Jail (hereafter, the "Jail"), Bullock County, Alabama and was a Correctional Officer at all times relevant to Plaintiff's Complaint.

    3.    I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

    4.    It is the policy of the Bullock County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Members of the Jail staff are charged with responding to such grievances.

    5.    To not address a grievance would be a violation of the policy of the Jail.

6.     To my knowledge, the Plaintiff did not report any grievance with respect to the subject matter of this lawsuit, or any other matter, during his ten (10) days of incarceration at the Jail.

7.     The Bullock County Sheriff's Department has a policy of providing adequate housing and food for its residents. Each inmate receives three nutritious meals per day. An inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for breakfast. Approximately three (3) days a week the inmates receive a hot breakfast, which would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. A typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and possibly pudding. A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread, green beans, and juice. Inmates receive a hot lunch approximately three (3) times a week. Inmates may get a "cold" supper, similar to the cold lunch described above. However, at least three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*, chicken or lasagna, green beans, mashed potatoes, bread, and juice. Inmates receive at least one hot meal a day. It would be a violation of Sheriff's Department policy to fail to provide an inmate with less than three nutritious meals per day.

8.     The Bullock County Jail is designed and built to hold 28 inmates. The jail currently averages approximately 31 inmates, an overage of approximately 3 inmates above capacity. These extra inmates are required to sleep in the "day room" (an inmate common area) rather than in beds in individual cells. However, each inmate assigned to the day room is issued a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.

9.     The Bullock County Jail has at least one (1) correctional officer on duty at all times. This is sufficient for a jail holding approximately thirty (30) inmates; however, should a

correctional officer need assistance, he or she has the ability and authorization to call for assistance from on-duty road deputies. Further, the Bullock County Jail does not conduct formal inmate counts, inasmuch as the jail is small enough to make such formalized procedures unnecessary.

10.   The Bullock County Jail does not provide a law library. However, inmates can request legal materials. To my knowledge, the Plaintiff never requested any legal materials.

11.   Weather, staffing, and security issues limit the availability of outdoor exercise opportunities for the inmates of the Bullock County Jail. However, inmates can walk or otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical exercise.

12.   If an inmate desires medical care, he or she may inform any correctional officer that he or she desires a doctor appointment. Those requests are relayed to the Jail Administrator, who then makes an appointment for the inmate to see a physician. In the event of an emergency, the jail staff is fully authorized to immediately transport an inmate to the emergency room of the local hospital. It is a violation of the jail's policy to deny an inmate necessary medical care. To my knowledge, the Plaintiff never complained of any medical ailment(s) or requested medical treatment.

13.   If an inmate believes that he or she requires mental health treatment, he or she can request it from any correctional officer. Those requests are relayed to the Jail Administrator, who then makes an appointment with East Central Mental Health-Mental Retardation Center (the "Center"). At the appointed time, the inmate is transported to the Center, which then evaluates the inmate's treatment needs. To my knowledge, the Plaintiff never complained of any mental health issues or requested treatment.

3

14.    .All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed.  Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions.  The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor do I have any knowledge of the Plaintiff being prescribed or requesting any medication.

15.    The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room.  The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population.  The cell block contains a table, which could be used to display a television if the inmates so choose.

16.    Some windows in the individual jail cells are broken out.  These are interior windows, and do not pose environmental, safety or security hazards.  The Plaintiff was not placed in an individual cell, and therefore did not have a cell window that could be broken.  The Plaintiff was assigned to the day room of the cell block.  The cell block windows are intact and not broken.

17.    The Bullock County Jail provides snack and drink machines for inmates who have money to take advantage of them.  However, at the time of the Plaintiff's incarceration, the Jail was between vendors, so no machines were available.  The Plaintiff never asked me to purchase any snacks or other merchandise for him.

18.    The Bullock County Jail does not provide religious services to its inmates.  However, inmates are allowed visits from clergy, church members, or other means of spiritual edification and instruction, as appropriate.

4

19.    Jail correctional officers do have access to a television in the "pod" (what the Plaintiff designates as the "Cube"), which is the supervision and surveillance area of the Jail.

20.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit; and that the above statements were made by drawing from my personal knowledge of the situation.


_____
Veronica Harris


**SWORN TO** and **SUBSCRIBED** before me this 22 day of January, 2007.


_____
NOTARY PUBLIC

My Commission Expires: 18 Feb 2008

5

**<u>EXHIBIT C</u>**

**Affidavit of Johnny Martin**
January 22, 2007

01/22/2007  17:00    334-738-3982              BULLOCK CO. SHERIFF                PAGE  19
01-19-'07 17:57  FROM-Webb Eley P.C.      334-262-1885          T-166  P012/026 F-400

Case 2:06-cv-01044-WKW-SRW   Document 10-4   Filed 01/23/2007   Page 2 of 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

KENNEDY MINNIFIELD, #130651,   )
                             )

    Plaintiff,               )
                             )

  v.                      )    Civil Action No. 2:06-cv-1044-WKW
                             )

BULLOCK COUNTY JAIL, *et al.*,   )
                             )

    Defendant.              )

## AFFIDAVIT OF JOHNNY MARTIN

STATE OF ALABAMA        )
                            )

COUNTY OF BULLOCK      )

1.    My name is Johnny Martin. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

2.    I am a Correctional Officer at the Bullock County Jail (hereafter, the "Jail"), Bullock County, Alabama and was a Correctional Officer at all times relevant to Plaintiff's Complaint.

3.    I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

4.    It is the policy of the Bullock County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Members of the Jail staff are charged with responding to such grievances.

5.    To not address a grievance would be a violation of the policy of the Jail.



6.      To my knowledge, the Plaintiff did not report any grievance with respect to the
subject matter of this lawsuit, or any other matter, during his ten (10) days of incarceration at the
Jail.

7.      The Bullock County Sheriff's Department has a policy of providing adequate
housing and food for its residents. Each inmate receives three nutritious meals per day. An
inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for
breakfast. Approximately three (3) days a week the inmates receive a hot breakfast, which
would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. A
typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and
possibly pudding. A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread,
green beans, and juice. Inmates receive a hot lunch approximately three (3) times a week.
Inmates may get a "cold" supper, similar to the cold lunch described above. However, at least
three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*,
chicken or lasagna, green beans, mashed potatoes, bread, and juice. Inmates receive at least one
hot meal a day. It would be a violation of Sheriff's Department policy to fail to provide an
inmate with less than three nutritious meals per day.

8.      The Bullock County Jail is designed and built to hold 28 inmates. The jail
currently averages approximately 31 inmates, an overage of approximately 3 inmates above
capacity. These extra inmates are required to sleep in the "day room" (an inmate common area)
rather than in beds in individual cells. However, each inmate assigned to the day room is issued
a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.

9.      The Bullock County Jail has at least one (1) correctional officer on duty at all
times. This is sufficient for a jail holding approximately thirty (30) inmates; however, should a

2

correctional officer need assistance, he or she has the ability and authorization to call for assistance from on-duty road deputies.. Further, the Bullock County Jail does not conduct formal inmate counts, inasmuch as the jail is small enough to make such formalized procedures unnecessary.

10.    The Bullock County Jail does not provide a law library. However, inmates can request legal materials. To my knowledge, the Plaintiff never requested any legal materials.

11.    Weather, staffing, and security issues limit the availability of outdoor exercise opportunities for the inmates of the Bullock County Jail. However, inmates can walk or otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical exercise.

12.    If an inmate desires medical care, he or she may inform any correctional officer that he or she desires a doctor appointment. Those requests are relayed to the Jail Administrator, who then makes an appointment for the inmate to see a physician. In the event of an emergency, the jail staff is fully authorized to immediately transport an inmate to the emergency room of the local hospital. It is a violation of the jail's policy to deny an inmate necessary medical care. To my knowledge, the Plaintiff never complained of any medical ailment(s) or requested medical treatment.

13.    If an inmate believes that he or she requires mental health treatment, he or she can request it from any correctional officer. Those requests are relayed to the Jail Administrator, who then makes an appointment with East Central Mental Health-Mental Retardation Center (the "Center"). At the appointed time, the inmate is transported to the Center, which then evaluates the inmate's treatment needs. To my knowledge, the Plaintiff never complained of any mental health issues or requested treatment.

3

14.    All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed. Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions. The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor do I have any knowledge of the Plaintiff being prescribed or requesting any medication.

15.    The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room. The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population. The cell block contains a table, which could be used to display a television if the inmates so choose.

16.    Some windows in the individual jail cells are broken out. These are interior windows, and do not pose environmental, safety or security hazards. The Plaintiff was not placed in an individual cell, and therefore did not have a cell window that could be broken. The Plaintiff was assigned to the day room of the cell block. The cell block windows are intact and not broken.

17.    The Bullock County Jail provides snack and drink machines for inmates who have money to take advantage of them. However, at the time of the Plaintiff's incarceration, the Jail was between vendors, so no machines were available. The Plaintiff never asked me to purchase any snacks or other merchandise for him.

18.    The Bullock County Jail does not provide religious services to its inmates. However, inmates are allowed visits from clergy, church members, or other means of spiritual edification and instruction, as appropriate.

4

19.    Jail correctional officers do have access to a television in the "pod" (what the Plaintiff designates as the "Cube"), which is the supervision and surveillance area of the Jail.

20.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

*Johnny Martin*

Johnny Martin

**SWORN TO** and **SUBSCRIBED** before me this 22 day of January, 2007.

*Barbara D Lewis*

NOTARY PUBLIC

My Commission Expires: 18 Feb 2008

5

# EXHIBIT D

**Affidavit of Annie Reynolds**
January 22, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

KENNEDY MINNIFIELD, #130651,          )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )          Civil Action No. 2:06-cv-1044-WKW
                                      )
BULLOCK COUNTY JAIL, *et al.*,        )
                                      )
    Defendant.                        )

### AFFIDAVIT OF ANNIE REYNOLDS

STATE OF ALABAMA          )
                          )
COUNTY OF BULLOCK         )

    1.    My name is Annie Reynolds. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

    2.    I am a Correctional Officer at the Bullock County Jail (hereafter, the "Jail"), Bullock County, Alabama and was a Correctional Officer at all times relevant to Plaintiff's Complaint.

    3.    I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

    4.    It is the policy of the Bullock County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Members of the Jail staff are charged with responding to such grievances.

    5.    To not address a grievance would be a violation of the policy of the Jail.

6.      To my knowledge, the Plaintiff did not report any grievance with respect to the
subject matter of this lawsuit, or any other matter, during his ten (10) days of incarceration at the
Jail.

7.      The Bullock County Sheriff's Department has a policy of providing adequate
housing and food for its residents. Each inmate receives three nutritious meals per day. An
inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for
breakfast. Approximately three (3) days a week the inmates receive a hot breakfast, which
would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. A
typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and
possibly pudding. A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread,
green beans, and juice. Inmates receive a hot lunch approximately three (3) times a week.
Inmates may get a "cold" supper, similar to the cold lunch described above. However, at least
three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*,
chicken or lasagna, green beans, mashed potatoes, bread, and juice. Inmates receive at least one
hot meal a day. It would be a violation of Sheriff's Department policy to fail to provide an
inmate with less than three nutritious meals per day.

8.      The Bullock County Jail is designed and built to hold 28 inmates. The jail
currently averages approximately 31 inmates, an overage of approximately 3 inmates above
capacity. These extra inmates are required to sleep in the "day room" (an inmate common area)
rather than in beds in individual cells. However, each inmate assigned to the day room is issued
a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.

9.      The Bullock County Jail has at least one (1) correctional officer on duty at all
times. This is sufficient for a jail holding approximately thirty (30) inmates; however, should a

correctional officer need assistance, he or she has the ability and authorization to call for
assistance from on-duty road deputies. Further, the Bullock County Jail does not conduct formal
inmate counts, inasmuch as the jail is small enough to make such formalized procedures
unnecessary.

10.     The Bullock County Jail does not provide a law library. However, inmates can
request legal materials. To my knowledge, the Plaintiff never requested any legal materials.

11.     Weather, staffing, and security issues limit the availability of outdoor exercise
opportunities for the inmates of the Bullock County Jail. However, inmates can walk or
otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical
exercise.

12.     If an inmate desires medical care, he or she may inform any correctional officer
that he or she desires a doctor appointment. Those requests are relayed to the Jail Administrator,
who then makes an appointment for the inmate to see a physician. In the event of an emergency,
the jail staff is fully authorized to immediately transport an inmate to the emergency room of the
local hospital. It is a violation of the jail's policy to deny an inmate necessary medical care. To
my knowledge, the Plaintiff never complained of any medical ailment(s) or requested medical
treatment.

13.     If an inmate believes that he or she requires mental health treatment, he or she can
request it from any correctional officer. Those requests are relayed to the Jail Administrator,
who then makes an appointment with East Central Mental Health-Mental Retardation Center (the
"Center"). At the appointed time, the inmate is transported to the Center, which then evaluates
the inmate's treatment needs. To my knowledge, the Plaintiff never complained of any mental
health issues or requested treatment.

3

14.    All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed. Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions. The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor do I have any knowledge of the Plaintiff being prescribed or requesting any medication.

15.    The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room. The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population. The cell block contains a table, which could be used to display a television if the inmates so choose.

16.    Some windows in the individual jail cells are broken out. These are interior windows, and do not pose environmental, safety or security hazards. The Plaintiff was not placed in an individual cell, and therefore did not have a cell window that could be broken. The Plaintiff was assigned to the day room of the cell block. The cell block windows are intact and not broken.

17.    The Bullock County Jail provides snack and drink machines for inmates who have money to take advantage of them. However, at the time of the Plaintiff's incarceration, the Jail was between vendors, so no machines were available. The Plaintiff never asked me to purchase any snacks or other merchandise for him.

18.    The Bullock County Jail does not provide religious services to its inmates. However, inmates are allowed visits from clergy, church members, or other means of spiritual edification and instruction, as appropriate.

4

19.   Jail correctional officers do have access to a television in the "pod" (what the Plaintiff designates as the "Cube"), which is the supervision and surveillance area of the Jail.

20.   I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

_____
Annie Reynolds

**SWORN TO** and **SUBSCRIBED** before me this _22_ day of January, 2007.

_____
NOTARY PUBLIC

My Commission Expires: _18 Feb 200_

**EXHIBIT E**

**Affidavit of Ruby Thomas**
January 22, 2007

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

KENNEDY MINNIFIELD, #130651,          )
                                      )
    Plaintiff,                    )
                                      )
v.                                    )      Civil Action No. 2:06-cv-1044-WKW
                                      )
BULLOCK COUNTY JAIL, *et al.*,        )
                                      )
    Defendant.                    )

### AFFIDAVIT OF RUBY THOMAS

STATE OF ALABAMA          )
                          )
COUNTY OF BULLOCK         )

    1.    My name is Ruby Thomas. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

    2.    I am a Correctional Officer at the Bullock County Jail (hereafter, the "Jail"), Bullock County, Alabama and was a Correctional Officer at all times relevant to Plaintiff's Complaint.

    3.    I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

    4.    It is the policy of the Bullock County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Members of the Jail staff are charged with responding to such grievances.

    5.    To not address a grievance would be a violation of the policy of the Jail.

Case 2:07-cv-00100-WKW-SRW Document 24-2 Filed 01/23/2007 Page 49 of 52

6. To my knowledge, the Plaintiff did not report any grievance with respect to the subject matter of this lawsuit, or any other matter, during his ten (10) days of incarceration at the Jail.

7. The Bullock County Sheriff's Department has a policy of providing adequate housing and food for its residents. Each inmate receives three nutritious meals per day. An inmate would typically be given cereal, a breakfast bar, juice, and sometimes pudding for breakfast. Approximately three (3) days a week the inmates receive a hot breakfast, which would include, *inter alia*, some combination of grits, bacon or sausage, eggs, and juice. A typical "cold" lunch would consist of, *inter alia*, a ham sandwich, potato chips, juice, and possibly pudding. A "hot" lunch would consist of, *inter alia*, chicken, mashed potatoes, bread, green beans, and juice. Inmates receive a hot lunch approximately three (3) times a week. Inmates may get a "cold" supper, similar to the cold lunch described above. However, at least three (3) days a week, the inmates receive a hot supper, which could consist of, *inter alia*, chicken or lasagna, green beans, mashed potatoes, bread, and juice. Inmates receive at least one hot meal a day. It would be a violation of Sheriff's Department policy to fail to provide an inmate with less than three nutritious meals per day.

8. The Bullock County Jail is designed and built to hold 28 inmates. The jail currently averages approximately 31 inmates, an overage of approximately 3 inmates above capacity. These extra inmates are required to sleep in the "day room" (an inmate common area) rather than in beds in individual cells. However, each inmate assigned to the day room is issued a sleeping mat which is similar to a mattress, a sheet, a blanket, a pillow, and a pillow case.

9. The Bullock County Jail has at least one (1) correctional officer on duty at all times. This is sufficient for a jail holding approximately thirty (30) inmates; however, should a

2

correctional officer need assistance, he or she has the ability and authorization to call for assistance from on-duty road deputies. Further, the Bullock County Jail does not conduct formal inmate counts, inasmuch as the jail is small enough to make such formalized procedures unnecessary.

10.    The Bullock County Jail does not provide a law library. However, inmates can request legal materials. To my knowledge, the Plaintiff never requested any legal materials.

11.    Weather, staffing, and security issues limit the availability of outdoor exercise opportunities for the inmates of the Bullock County Jail. However, inmates can walk or otherwise exercise in the day room, which is of sufficient size to allow for meaningful physical exercise.

12.    If an inmate desires medical care, he or she may inform any correctional officer that he or she desires a doctor appointment. Those requests are relayed to the Jail Administrator, who then makes an appointment for the inmate to see a physician. In the event of an emergency, the jail staff is fully authorized to immediately transport an inmate to the emergency room of the local hospital. It is a violation of the jail's policy to deny an inmate necessary medical care. To my knowledge, the Plaintiff never complained of any medical ailment(s) or requested medical treatment.

13.    If an inmate believes that he or she requires mental health treatment, he or she can request it from any correctional officer. Those requests are relayed to the Jail Administrator, who then makes an appointment with East Central Mental Health-Mental Retardation Center (the "Center"). At the appointed time, the inmate is transported to the Center, which then evaluates the inmate's treatment needs. To my knowledge, the Plaintiff never complained of any mental health issues or requested treatment.

3

01/22/2007 17:00 334-738-3982 BULLOCK CO. SHERIFF PAGE 12
01-19- 07 13:00 FROM-Webb Eley P.C. 334-262-1885 T-166 P020/026 F-400

Case 2:06-cv-01044-WKW-SRW Document 10-6 Filed 01/23/2007 Page 5 of 6

14. All inmate medications are pre-packaged by dose at a pharmacy and numbered to indicate when they are to be distributed. Jail correctional officers distribute inmate medications strictly according to pharmacy preparations and instructions. The Plaintiff did not receive any medication during his incarceration at the Bullock County Jail, nor do I have any knowledge of the Plaintiff being prescribed or requesting any medication.

15. The Bullock County Jail does not provide a television to inmates; however, inmates are allowed to receive televisions, which they can watch in their cells or the day room. The inmates are given the discretion to put the television wherever they wish to improve reception and to make viewing available to the cell block population. The cell block contains a table, which could be used to display a television if the inmates so choose.

16. Some windows in the individual jail cells are broken out. These are interior windows, and do not pose environmental, safety or security hazards. The Plaintiff was not placed in an individual cell, and therefore did not have a cell window that could be broken. The Plaintiff was assigned to the day room of the cell block. The cell block windows are intact and not broken.

17. The Bullock County Jail provides snack and drink machines for inmates who have money to take advantage of them. However, at the time of the Plaintiff's incarceration, the Jail was between vendors, so no machines were available. The Plaintiff never asked me to purchase any snacks or other merchandise for him.

18. The Bullock County Jail does not provide religious services to its inmates. However, inmates are allowed visits from clergy, church members, or other means of spiritual edification and instruction, as appropriate.

4

19.    Jail correctional officers do have access to a television in the "pod" (what the Plaintiff designates as the "Cube"), which is the supervision and surveillance area of the Jail.

20.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

_Ruby Thomas_
Ruby Thomas

**SWORN TO** and **SUBSCRIBED** before me this 22 day of January, 2007.

_William D Lewis_
NOTARY PUBLIC

My Commission Expires: 18 Feb 2008